# Baltimore & Ohio Railroad Company, Appellant, *v.* T. W. Phillips Gas & Oil Company.

*Railroads—Freight—Classification—Scrap iron—Question for jury.*

1. Where a gas company has paid to a railroad company freight on a shipment of iron pipe, and the freight has been charged under a schedule applicable "upon scraps or pieces of iron or steel which have value for remelting purposes only," the gas company cannot subsequently be called upon to pay an additional sum representing the difference between the schedule specified and a schedule of a higher rate, merely because the gas company may have had some special use for a small portion of the pipe, other than for remelting purposes, or merely because the company was a gas company and not a mill engaged in remelting scrap iron. In such a case the question of the proper classification of the pipe for freight purposes is a mixed one of law and fact to be determined by a jury under the evidence after proper instructions from the court.

2. In determining the question, the price paid by the gas company for the pipe as compared with the market price of scrap iron fit for remelting only, and the fact that the great bulk of the shipment as a whole was used as pipe and not as scrap, are relevant, although not conclusive facts, to be submitted to the jury.

Argued May 14, 1913. Appeal, No. 173, April T., 1913, by plaintiff, from judgment of C. P. Butler Co., Sept. T., 1909, No. 36, on verdict for defendant in case of Baltimore & Ohio Railroad Company *v.* T. W. Phillips Gas & Oil Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit to recover freight on an intercommerce shipment of iron pipe. Before GALBREATH, P. J.

From the record it appeared that the suit was brought to recover a difference in freight charged under class VI of the published schedule of rates applicable to scrap iron and class V providing for a higher rate. The shipment in question which consisted of iron pipe was charged for as scrap iron at the lower rate.

The court charged in part as follows:

There is no substantial conflict in the testimony in this case so far as the facts are concerned and testimony of the witnesses. There is no substantial conflict at all as to the use that was made of this pipe and all that. The controlling thing in this case is this, as I look upon it. If the same thing had been shipped to a melting furnace as scrap and charged scrap rates, then the plaintiff company is bound to give the present shipper the same rate. The witnesses, two of the witnesses for the plaintiff company, the railroad company, on cross-examination stated that if this had been sent to a smelting mill to be melted over that the rates would have been the scrap iron rates, but that as it was used by the present defendant for another purpose that therefore they did not allow the lower rate. That, in substance, is the testimony in the case. Mr. Stoughton who, I believe, says he is inspector of freights, together with Mr. Childers, who says he is adjuster of freight rates for the joint traffic association, says that if this had been shipped to a melting furnace or melted that the rates would have been the scrap iron rates. If that be true, gentlemen, if this same kind of material shipped to another user and another use would have been classed as scrap iron then the common carrier, the railroad company, cannot charge another rate because a man wants to use it for another purpose. As I stated, there is no conflict in the testimony in this case at all about that, as far as I can ascertain, unless you disbelieve the plaintiff's own witnesses on cross-examination, as well as the testimony of Mr. Phillips when he says that

they told him that had it been shipped to a melting mill it would have been a lower rate; that if it had been shipped for melting purposes it would have been entitled to the lower rate. If that be true, then, gentlemen, it does not matter what it might have been, in your opinion, scrap or not, they are bound to give the present defendant that lower rate. It is only in the event that you do not believe that testimony that it could have charged the higher rate. If the railroad company had classified it as scrap, if shipped for another purpose, then it is scrap for all purposes.

Mr. Allen: There is one point that comes to my mind and that is this: That pipe that was shipped to the Phillips Company, as I understand, was of too much value to ship to a smelting mill. They wanted it to make another gas line, and we figured that if it was of that value it would not in that case be going to a smelting mill.

The Court: If the railroad company itself, in interpreting its own rules, would have classified it as scrap, if shipped to a mill, then it does not matter to us what use was made of it at all.

The plaintiff requested the court to instruct the jury:

1. That the use to which the pipe was put and intended to be put by the defendant at the time of its purchase and shipment is the true criterion by which its character is to be ascertained and the propriety of the plaintiff's charges is to be determined under the official classification in effect at the time of shipment. *Answer:* Refused. [1]

2. That the evidence of both the plaintiff and defendant showing that the pipe, for the transportation charges of which this action is brought, were full length joints of eighteen to twenty feet and had value for purposes other than for smelting only, the verdict must be for the plaintiff. *Answer:* Under all the evidence in this case, gentlemen, this point is also refused. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) above instructions, quoting them, and (3) that the court "erred in submitting to the jury in its general charge the question whether the classification of said shipment was discrimination."

*R. P. Scott*, for appellant.—The plaintiff's testimony showed that the pipe composing said shipment was wrought iron pipe in joints of eighteen to twenty feet in length and eight. inches in diameter and had value for other than remelting purposes only, and was not scrap iron under the definition contained in the official classification and ratings of scrap iron and steel, which provides "that scrap iron and steel ratings will apply upon scraps or pieces of iron or steel which have value for remelting purposes only," and that it was properly classified and rated as fifth class at 17.5 cents per 100 pounds, under the official classification and rating of iron and steel pipe: National Machinery & Wrecking Co. v. Ry. Co., 11 Int. St. Com. Rep. 581; Texas & P. Ry. Co. v. Cotton Co., 204 U. S. 426; Gulf, C. & S. F. Ry. Co. v. Hefley, 158 U. S. 98; Texas & P. Ry. v. Mugg, 202 U. S. Rep. 242.

*T. C. Campbell*, 1or appellee, cited: American Tie & Timber Co. v. Ry. Co., 175 Fed. Repr. 28; Schlesinger v. Beard, 120 U. S. 264; Worthington v. Robbins, 139 U. S. 337; Dwight v. Merritt, 140 U. S. 213.

OPINION BY HEAD, J., October 13, 1913:

If the shipment of iron pipe carried for the defendant by the plaintiff railroad company was by it properly classified as embraced in class V of its schedule of published rates and tariffs, then it was entitled to recover the sum sued for. If, as the· defendant contends, the pipe shipped was embraced in class VI of the same schedule, then the plaintiff has already been paid. all it was lawfully entitled to demand. Class V is the larger and more comprehensive of the two. It would cer-

tainly include the iron pipe shipped by the defendant unless it is made to appear, from the evidence introduced, that this particular shipment is drawn within the more narrow and restricted class of freight designated as class VI.

In determining this question it ought to be plain that we are not concerned with the propriety of the classification made by the railroad company in its schedules, or the reasonableness of the rates charged for each class. The sole question for determination by the trial court and jury was, did the shipment in controversy fall within the one class or the other as these classes were defined by the language of the schedule? How was that question to be determined? In the published schedule of rates and tariffs of the plaintiff company the language we are about to quote, declaring and defining the limitations of class VI, must be accepted by us as controlling. "The above specified rates (those published for class VI) will apply upon scraps or pieces of iron or steel which have value for remelting purposes only." In disposing of this case that language must be applied as if it were embodied in a statute or in a written contract between private parties. In so construing it we agree with the learned trial judge there is nothing conclusive in the fact that the defendant devised some special use for a portion of the pipe, if the shipment as a whole would have been considered by the trade generally as scraps which, to the commercial eye, had value "for remelting purposes only." We also agree that in determining the proper classification of a given shipment, the personality of the consignee is of no significance. The character of the shipment at the time and place the goods were delivered to the railroad company did not change because one such shipment might be consigned to a mill, another to a gas company.

We may agree also that it is the duty of the railroad company to make no discrimination in rates on the same class of goods, with the result that the cost of transporta-

tion would be greater if the consignee of the freight was any other person than a mill, the business of which was to remelt scrap iron. We cannot agree, however, that because two of the officials of the plaintiff company, on cross-examination, gave it as their opinion that if this shipment had been consigned to a mill it would probably have been rated without question as in class VI, the present defendant became entitled to the same rate. The railroad company might by accident or design classify a given shipment as in class VI and entitled to the lower rate, when in fact such shipment should have been billed as in class V and subject to the higher rate. But the result of such a mistake or willful discrimination would not be that every consignee of goods embraced in class V could successfully demand that he too was entitled to the lower rate. We cannot escape the conclusion that this was the dominant thought of the learned judge throughout the trial of the cause and it finds expression a number of times.

Whilst therefore, in order that the defendant should be entitled to the lower rate, it must be made to appear that the shipment answered, in description and character, to the language of the schedule, yet it is also clear that the question was a mixed one of law and fact to be determined by the jury under the evidence after proper instructions from the court. In other words, the purpose of the evidence introduced would be to apply the language of the schedule to the physical characteristics of the shipment as it was at the time of its delivery, in Indiana, to the railroad company. If that shipment as a whole, viewed with the eye of the market, had no other value than for purposes of remelting, it was clearly and fairly embraced within class VI and the plaintiff would have no further claim. If, on the other hand, when viewed in the same way, the shipment as a whole did have value for other uses and purposes, then it belonged to class V and the plaintiff's action rests on a firm foundation. In determining this question, the

price paid by the defendant as compared with the market price of scrap iron fit for remelting only, if such market price can be established, would be a relevant although not a conclusive fact. In the same manner, if it appeared from the testimony that the great bulk of the shipment as a whole was used as pipe and not as scrap, this again would be a fact of much significance although again not necessarily a conclusive one.

The case in principle is similar to that of Dwight v. Merritt, 140 U. S. 213. That case turned upon the proper construction of the language of the revenue statute to ascertain the class to which an importation belonged. We quote the following from the opinion of Mr. Justice LAMAR: "The language of the statute is plain and unambiguous in its definition of what shall constitute 'scrap iron' under that schedule. The phrase 'nothing shall be deemed scrap iron except waste or refuse iron that has been in actual use and is fit only to be remanufactured,' clearly shows that there might be other classes or kinds of scrap iron known to the trade than those mentioned as dutiable under that clause of the statute, and therefore clearly indicates that not everything generally known as 'scrap iron' was dutiable under that clause. The statute evidently contemplated that 'scrap iron,' as known to the trade and in commercial usage, was rather a broad term, embracing several varieties of iron; but it was only certain kinds of it that were dutiable under that clause." So here, it will not be sufficient for the defendant to show by evidence merely that the shipment in controversy would be classed as scrap or scrap iron. It must be further made to appear that it had value "for remelting purposes only," because we must start with the proposition that the propriety of the classification as made is not open to attack in the present proceeding.

When upon a retrial the evidence shall have fairly applied the language of the schedule to the pipe in controversy, the verdict of the jury will be truly re-

sponsive to the real issue between the parties.  We are of the opinion the case was tried along erroneous lines and it must therefore go back for retrial according to the principles we have endeavored to set forth.  We have already indicated that the first assignment of error cannot be sustained.  The affirmance of the plaintiff's first point would have turned the whole case on the fact that the defendant made some other use of the pipe, or a portion of it, than to remelt it.  For the same reason we do not sustain the second assignment.  We do not think the learned trial judge was bound to say, as matter of law, that the pipe had value for other purposes than for remelting only.  But the third assignment, which complains of the instructions given to the jury in the general charge and on their request for further directions, is sustained.

Judgment reversed and a venire facias de novo awarded.