# Bessemer & Lake Erie Railroad Company, Appellant, *v.* T. W. Phillips Gas & Oil Company.

*Railroads—Freight—Classification—Scrap iron—Erroneous charge.*

In an action by a railroad company against a gas company to recover a sum of money representing the difference between a freight rate actually paid on scrap iron according to a classification given by the shipper, and a higher rate on a classification which was alleged to be the correct one, it appeared that the rate had been charged under a schedule applicable "upon scraps or pieces of iron or steel which have value for remelting purposes only." The evidence strongly tended to show that the defendant by cutting off broken ends and joints of the sections of pipe, had relaid it and was actually using it as a pipe line for the transportation of gas. The court in its charge used language which tended to indicate that the jury might disregard the evidence that the pipe had been used for other purposes than that of remelting. The jury returned a verdict for the defendant. *Held,* that the judgment on the verdict should be reversed.

Argued May 11, 1914. Appeal, No. 154, April T., 1914, by plaintiff, from judgment of C. P. Butler Co., March T., 1912, No. 48, on verdict for defendant in case of Bessemer & Lake Erie Railroad Company v. T. W. Phillips Gas & Oil Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Assumpsit to recover additional freight on a shipment of scrap iron.

The court charged in part as follows:

The bill of lading which has been offered in evidence shows that the shipment was received subject to the classification and tariffs in effect on the date of issuing of this shipping order. That was in November, 1908. So that when we have determined what the rate was of the different classes then the only question of fact to be determined by the jury is to what class did this ship-

ment belong. In this classification, as testified to by Mr. Styers, on page 97, item 8, we have this: The particular portion of item 8, to which I call your attention, is that in regard to wrought iron and which, we are told, comes under class five. Your attention is also called to page 99, item 28, and especially the note appended, from which it appears that scrap belongs to another class, class six, and that the note appended explains what comes within that particular class. The note reads as follows: "The above specified rating will apply upon scraps or pieces of iron or steel which have value for remelting purposes only." Now the classification thereof, is determined in part by the note of explanation that scrap iron is that which has value for remelting purposes only. So; gentlemen, it is for you now to determine from the evidence whether or not this shipment came within the classification of scrap iron, consisting of iron which had value for remelting purposes only or whether it came within the other classification of pipe iron, and that is the matter of fact to be determined by the jury from the evidence. Calling your attention briefly to the evidence on each side, regarding that question, gentlemen, this pipe itself, it seems, was pipe that had been formerly used and buried in the ground in the state of Indiana, as I infer from the testimony, and that it was taken out of the ground by the use of a hoisting derrick and in that way somewhat torn up in getting it out of the ground, probably. That would seem to be the gist, at least, of the testimony, and it is said that it was for that reason injured and mutilated somewhat at the ends and some portions of the pipe itself were rusted, and that that was the condition in which it was at the time it was shipped and received. [So that in considering what classification it belonged to, gentlemen, you will consider, among other things, the character of the pipe as it would present itself to a casual observer, seeing it with his eyes.] [3] Now going a step further, this bill of lading denominates

this as scrap pipe. Gentlemen, that is only a circumstance; it is not conclusive at all that it was scrap pipe, but is a circumstance for your consideration that it was shipped from the point of shipment to the consignee here as scrap pipe. That is a circumstance for your consideration, but is not conclusive of the fact that it was in reality scrap pipe rather than pipe that might be used for other purposes. In the next place, you may consider the use that was made of it, not for the purpose of determining its class, but its use, not as affecting what its character was, by the use that was actually made of it. [It does not matter at all, gentlemen, what use was made of the shipment after it was received so far as determining its class was concerned. In other words, the class to which it belonged is not determined by the use made of it after it was received, but rather its character is to be determined by what it is, what appearance it presents, independent of the use made of it, but in determining what its original character was you may consider what use was made of it afterwards, in order to determine that original character. Now was it pipe or was it scrap, that is, material that its only use was for remelting purposes? And when we come to that matter, gentlemen, remelting purposes only, I think it is proper to say to you that that cannot be taken too literally.] [4] I presume there is very little of what might be determined scrap that might not, some portion, be taken out and used for other purposes than melting purposes. There might be iron pipe that belonged to the classification of iron pipe that had some portions of it that were only fit, possibly, to be cut off and thrown to the junk heap, but if the dominant character of the whole shipment was that of pipe, it would still be iron pipe, notwithstanding the fact that some portions had to be cut off and could not be used as pipe, but fit only for scrap pipe. On the other hand, a shipment might be scrap iron and yet some portions be called out and be made use of for other purposes than for remelting. So

that it is not absolutely conclusive, that some portions of it may be the one or the other, but the question is, what is the dominant character of the shipment? Is it scrap or pipe? If it is of that character, gentlemen, that general character that it can only be utilized as a whole or in general by having it remelted and recast into other forms or the original form, then, gentlemen, it would be scrap. If, on the other hand, it is of that general character that it may be used as pipe, although some portions are deficient, and only fit for scrap pipe, nevertheless if the general character be that of pipe, then it would be subject to the classification of pipe rates and would have to pay the pipe rates. So that when we speak of the use that was made of it that is only for the purpose of indicating to what extent it was fit for that purpose and so throw some light backward upon what its original character was. You will understand that it does not make a bit of difference to a railroad company when a thing is shipped over its lines whether that be used for one purpose or another purpose. The character is to be determined by what it actually was at the time of shipment, notwithstanding the use that might afterwards be made of it, and that could only be considered for the purpose of throwing some light backwards on what its original character was. [You have also the testimony of Mr. Stoughton, who says he was inspector of freight and that he inspected this pipe and he says in his opinion it was pipe, and not scrap, for the reason that it had been used for other purposes than for remelting, and you heard the reasons which he gave for having denominated it pipe rather than scrap. On the other hand, you have the testimony of Mr. Phillips, who says he has been in the oil and gas business for a great many years and presumably has some knowledge as to what constitutes scrap and what pipe, and he says in his opinion it was scrap. You will determine from that evidence what the character of this shipment was.] [5]

Plaintiff presented this point:

If the jury are convinced from all the evidence in the case that the freight delivered by the plaintiff to the defendant was iron pipe, and that the same was used by the defendant in constructing a line of pipe for the purpose of transporting gas, and was used by the defendant, this is conclusive evidence that the said freight or iron pipe had value for other purposes than remelting, and the verdict must be for the plaintiff. *Answer:* If the jury are convinced from all of the evidence in the case that the freight delivered by the plaintiff to the defendant was iron pipe and not scrap iron, the verdict should be for the plaintiff, and the fact that portions of it were used by the defendant company for pipe line purposes is evidence tending to show, but it is not conclusive of its character, but must be considered by the jury in determining what its character was as to being pipe or scrap iron, under the official classification of the railroad company, and I should say to you in that connection that the determining standard by which we must conclude to what this class belongs is the standard set out in the classification of the railroad company; that is the standard of classification to which the evidence must relate. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) refusal of binding instructions for plaintiff; (2–5) portions of charge as above, quoting them.

*John H. Wilson,* of *Wilson & McQuistion,* with him *Templeton, Orr & Whiteman,* for appellant.

*T. C. Campbell,* for appellee, cited: American Tie & Timber Co. v. Kansas City Southern Ry. Co., 175 Fed. Repr. 28; Schlesinger v. Beard, 120 U. S. 264; Worthington v. Robbins, 139 U. S. 337; United States v. Citroen, 223 U. S. 407; Dwight v. Merritt, 140 U. S. 213.

OPINION BY HEAD, J., July 15, 1914:

This case is in every substantial respect similar to that of B. & O. R. R. Co. v. Phillips Gas & Oil Co., 55 Pa. Superior Ct. 246. It was tried in the court below while the appeal just referred to was pending and before its determination in this court. We then held the question of the proper classification of the pipe which was transported by the appellant for the appellee was a mixed question of law and fact to be determined by the jury under proper instructions from the court. The defendant paid to the railroad company the amount that would be justly coming to it in freight charges, if the pipe which was shipped should be properly billed in class VI of the published tariffs. If, as the appellant contends, it could only be properly embraced in class V of the same schedule, then it is agreed the plaintiff was further entitled to receive the additional sum it sues for.

It is to be observed that what is known as class VI is a very limited one. Admittedly the shipment in this case would come within the broader terms of class V unless it be shown by satisfactory evidence that it fairly meets the more limited specifications of class VI. The evidence was altogether oral and some of it, of necessity, was in the nature of opinion evidence. Although the defendant offered no evidence except the original bills of lading, duly receipted, the credibility of the witnesses and the accuracy of their judgment were questions to be dealt with by the jury. To entitle the defendant to the benefit of the cheaper rate which it claimed, it was necessary the evidence should establish to the satisfaction of the jury not only that the pipe, which was the subject of the shipment, could fairly be called scrap iron or scrap pipe, but also that it had "value for remelting purposes only." The most important and significant fact established by the uncontradicted evidence was that the defendant, by cutting off broken ends and joints of the sections of pipe, had

relaid it and was actually using it as a pipe line for the transportation of gas. In the absence of countervailing evidence, this fact would naturally lead to an inference that the pipe had value for other purposes than remelting. In the former case we adverted to matters of evidence that would be legally competent to rebut, to some extent at least, such an inference. No such testimony was produced by the defendant. We again say, as we said before, we do not think the fact of such use, standing alone, would so far conclude the defendant as to warrant the trial judge in directing a verdict for the plaintiff. But coupled as it was in this case with the expert testimony of witnesses, apparently competent for that purpose, and in the absence of any testimony on the part of the defendant, it is difficult to understand how the jury reached a verdict for the defendant unless they were misled by the instructions of the learned trial judge in the charge.

In that portion of the charge which is made the subject of the fourth assignment of error, the learned judge said: "It does not matter at all, gentlemen, what use was made of the shipment after it was delivered so far as determining its class was concerned. In other words, the class to which it belonged is not determined by the use made of it after it was received, but rather its character is to be determined by what it is." Clearly the first sentence quoted was an erroneous statement as to the significance and value of the fact that the pipe shipped was not only fit to use for other purposes than remelting, but actually had been successfully so used.

Ordinarily the trial judge should not be convicted of error because of a single misstatement of the law, if in other parts of the charge the law be correctly stated so that an appellate court may determine the erroneous statement was not harmful. Fairness to the learned trial judge requires us to say that almost immediately following the language quoted he said: "But in deter-

mining what its original character was you may consider what use was made of it afterwards in order to determine the original character." But again this is followed by further instruction that seems to indicate he did not attach sufficient importance to the fact of its subsequent use and to the inferences that would fairly arise from that fact in the absence of rebutting evidence. He then goes on: "Now was it pipe or was it scrap; that is, material that its only use was for remelting purposes, and when we come to that matter, gentlemen, remelting purposes only, I think, it is proper to say to you that that cannot be taken too literally." Why should it not be taken literally? The tariffs of a railroad company, approved by the interstate commerce commission and posted according to law for public information, are binding and have all of the effect of statute law. When couched in language plain and intelligible, which is not even alleged to be ambiguous, there is no room for construction of such language by the courts. In such cases their duty is to administer the law as it is written.

As we have already pointed out, the verdict for the defendant, in the face of what would appear to be the great preponderance of the evidence, renders it impossible for us to say that the plaintiff suffered no harm by the instructions we have quoted as well as by those used in a later portion of the charge covered by the fifth assignment of error. We feel obliged therefore to sustain these two assignments.

The judgment is reversed and a venire facias de novo awarded.