# DWIGHT *v.* MERRITT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES . FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 281.   Argued April 2, 1891. — Decided May 11, 1891.

In an action against a collector to recover back an alleged excess of duties imposed upon an importation of iron rails, the duty having been imposed upon them as " iron bars for railroads " under Rev. Stat. § 2504, Schedule E, and the importer claiming that they were subject to duty as " wrought scrap iron " under the same schedule, the burden of proof is on the plaintiff to satisfy the jury that they had been in actual use before exportation, and that fact must be proved in order to recover.

The dutiable classification of articles imported must be ascertained by an examination of them, and not by their description in the invoice.

The statutes codified in the Revised Statutes and repealed with their enactment may be referred to in order to interpret the meaning of obscure and ambiguous phrases in the revision; but not when the meaning is clear and free from doubt.

The case is stated in the opinion.

*Mr. Edwin B. Smith* for plaintiffs in error.

*Mr. Assistant Attorney General Maury* for defendant in error.

Mr. Justice Lamar delivered the opinion of the court.

This · was an action by an importer, the testator of the present plaintiffs in error, against a late collector of the port

of New York, to recover an alleged excess of duty exacted on a cargo of iron rails imported from Pillau, Russia, in June, 1880.

The collector assessed a duty on the merchandise at seventy cents per hundred pounds, under Schedule E, sec. 2504, Rev. Stat., as "iron bars for railroads or incline planes." The importer claimed that the merchandise was dutiable at only $8 per ton, under the following provision of the same schedule: "Wrought scrap iron of every description: eight dollars per ton. But nothing shall be deemed scrap iron except waste or refuse iron that has been in actual use, and is fit only to be remanufactured."

The importer paid the duties as assessed, duly protested against their exaction and appealed to the Secretary of the Treasury, who affirmed the ruling of the collector. Thereupon this action was brought to recover the difference between the duty exacted and what the importer claimed should have been exacted, amounting to $2880.65. The case was tried before Judge Shipman and a jury, resulting in a verdict and judgment in favor of the collector. To review that judgment this writ of error is prosecuted.

The bill of exceptions shows the following facts: The rails in question were completed rails and were imported from Russia by Waterman & Co., of Philadelphia, for the purpose of breaking them up and remanufacturing them in Waterman's mill, at Danville, Pennsylvania. They were in fact so disposed of. The rails were not suitable for use in this country, in the condition they were imported, being of too high a pattern to be safe, too short, and too heavy and expensive. They were fit in this country only for remanufacture. There was no evidence that they had ever been used for any purpose whatever, or had ever been laid on a railroad in Russia, although they had been sent to that country for that purpose; and were, when imported, somewhere from three to eight years old and rusty.

The evidence of the plaintiff's witnesses showed that the rails, as imported, were too expensive for profitable use on American railroads; and that at the time of their importation it

would have paid better to import a new rail of this character, provided it could be entered under the scrap iron schedule, and remodelled for the purpose of making railroad rails, than to buy pig iron and manufacture the rails from that, because, for the purpose of making new iron rails, these rails were three processes further advanced than pig iron would be. Those witnesses also testified that they could not say whether or not the rails in question had ever been in actual use prior to their importation.

The plaintiff offered to show by a witness who was familiar with the manufacture of iron, what the terms "scrap iron" and "waste iron" usually meant in the trade, or in commercial usage, but the defendant objected; and the court sustained the objection, on the ground that those terms were defined by the statute. Whereupon the plaintiff saved an exception.

Another witness called by the plaintiff was allowed to testify, describing the different varieties of scrap iron, the manner in which it originated and the purposes for which it was afterwards used.

The defendant's witnesses testified, in substance, that the rails in question were all of the same length and weight, and were not broken on the edges or elsewhere; but, on cross-examination, they admitted that they varied in weight somewhat, there being sixty-three pounds difference between the heaviest and the lightest.

The court charged the jury that, under the evidence and the law of the case, the only question was whether the iron had been in actual use prior to its importation, for the requirements of the statute, in respect to actual use, applied as well to waste as to refuse iron; that the burden of proof was on the plaintiff to satisfy the jury, by a fair preponderance of the evidence, that the rails had been in actual use; and that, unless that fact were so proven, their verdict should be for the defendant. Counsel for the plaintiff excepted to those portions of the charge above mentioned, and the only real question to be determined here is as to the correctness of those instructions; for if they were correct, the evidence offered as

to the commercial designation of the term "scrap iron" was immaterial, and there was no error in excluding it from the jury.

The provision of the statute invoked by the plaintiff is found in Schedule E, sec. 2504, Rev. Stat., and, with its punctuation, as published in the second edition of the Revised Statutes, is as follows: "Wrought scrap iron of every description: eight dollars per ton. But nothing shall be deemed scrap iron except waste or refuse iron that has been in actual use, and is fit only to be remanufactured."

It is clear that the rails were dutiable either under the clause claimed by the collector to embrace them, or under the scrap-iron clause above quoted, invoked by the plaintiff in error, since no other provision of the metal schedule appears to have, or is claimed to have, any application to the question, and they were confessedly not on the free list.

The plaintiff in error contends that the action of the collector was illegal in assessing as "iron bars for railroads or inclined planes," old iron rails which, it is admitted, were not adapted to any such use, nor imported for any such purpose, but which were manifestly imported solely for remanufacture. It is urged in support of this view, that as the law stood prior to the enactment by Congress of the Revised Statutes of the United States, as shown by the act of March 2, 1861, 12 Stat. 180, the provision corresponding to the one under discussion was in the following words: "On all iron imported in bars for railroads or inclined planes made to patterns *and fitted to be laid down upon such roads or planes without further manufacture* and not exceeding six inches high, twelve dollars per ton;" that this statute and phraseology were changed by the act of June 30, 1864, 13 Stat. 204, by omitting the limitation of height and substituting a rate by the pound for that of the ton, as follows: "On all iron imported in bars for railroads and inclined planes, made to patterns and *fitted to be laid down on such roads* or planes *without further manufacture, sixty cents per one hundred pounds;*" that an additional ten cents per one hundred pounds was imposed under the pressure of financial necessity, by the act of March 3, 1865, 13 Stat. 493, "on iron bars for railroads or inclined planes;" and it is in-

sisted that, as these two last-mentioned tariff acts are repro-
duced in this brief phrase of the Revised Statutes, no meaning
should be attached to it different from that which obtains in
those statutes.   The argument is ingenious, but we cannot
agree with the conclusion to which it conduces.

The Revised Statutes are not a mere compilation and con-
solidation of the laws of Congress in force on the 1st of Decem-
ber, 1873.   The object of that revision was to simplify and
bring together all statutes and parts of statutes which, from
similarity of subject, ought to be brought together, to expunge
redundant and obsolete enactments, and to make such alter-
ations as might be necessary to reconcile contradictions and
amend imperfections in the original text of the preëxisting
statutes.   All those statutes were abrogated by section 5596,
which provides that " all acts of Congress passed prior to said
first day of December, one thousand eight hundred and seventy-
three, any portion of which is embraced in any section of said
revision, are hereby repealed, and the section applicable thereto
shall be in force in lieu thereof."

It is true that those statutes, though repealed simultaneously
with the enactment of the Revised Statutes, may be referred
to and considered, in order to interpret the meaning of obscure
and ambiguous phrases in any section of said revision; but no
such reference is necessary or proper in order to modify, under
the color of interpretation, any phrases the meaning of which
is clear and free from any doubt, except what the terms of the
statute invoked may suggest.

The title of the Revised Statutes headed " Duties Upon
Imports " is manifestly intended to be a complete system of
tariff legislation, and to embrace and provide for every class
of imported articles subject to import duties.   The clause we
are now considering in the provision of Schedule E, section
2504, is in clear, explicit and intelligible language.   There is
nothing in that clause, or in any other clause in that section,
or in any other section in that title, which renders the mean-
ing of this particular phrase doubtful or leaves room for inter-
pretation or the interpolation of words taken from other
preceding statutes upon the subject.

The next question is, was the merchandise, in any sense, dutiable under the "scrap iron" schedule? In other words, was the construction put upon that clause of the statute the correct one? The exact language of the court in its instruction to the jury on this question was as follows: "The statute defines scrap iron to be waste or refuse iron that has been in actual use and is fit only to be remanufactured. It is in proof that this importation was fit in this country only for remanufacture. The only question is, whether the iron had been in actual use, for the requirement that it should have been in actual use applies as well to waste as to refuse iron."

Looking to the language of the statute, it is clear that the grammatical construction of it authorizes the conclusion adopted by the court; and it is immaterial, in this connection, whether the terms "waste" and "refuse" be held to apply to two different classes of iron, as is claimed by the plaintiffs in error, or whether, as is most probably the case, they are used in the statute as synonymous terms to represent old iron generally. The language of the statute is plain and unambiguous in its definition of what shall constitute "scrap iron" under that schedule. The phrase "nothing shall be deemed scrap iron except," etc., clearly shows that there might be other classes or kinds of scrap iron known to the trade than those mentioned as dutiable under that clause of the statute, and, therefore, clearly indicates that not everything generally known as "scrap iron" was dutiable under that clause. The statute evidently contemplated that "scrap iron," as known to the trade and in commercial usage, was rather a broad term, embracing several varieties of iron; but it was only certain kinds of it that were dutiable under that clause. We think the construction adopted by the court a correct one, and that any other would be strained and unauthorized.

As persuasive of this view it may be well to state that it is the one adopted by the Treasury Department and always acted on in administering the tariff act; and it is the interpretation placed on the act by Attorney General Devens, January 24, 1880, 16 Opinions Attys. Gen. 445.

Moreover, looking at the clause of the statute under which

the duty was assessed, and taking into consideration the actual condition of the rails when imported, we think the importer's invoice improperly described the rails as "pieces iron rails, rusty;" and it would seem that the classification made by the collector was right. They were completed rails, and had never been in actual use, although they were several years old and somewhat rusty. Their condition was that of "iron bars for railroads or inclined planes." True, they may not have been made after the most approved style of the article in use on American railroads; but that does not alter their condition at that time, which is the test as to their dutiable classification. As was said by Mr. Justice Blatchford, speaking for the court in *Worthington* v. *Robbins*, decided at the present term, 139 U. S. 337: "In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported." In this case the rails were described in the invoice as "pieces iron rails, rusty;" by the appraiser as "iron railway bars;" and in the original entry and on the withdrawal as "pieces old iron rails." From these descriptions, which were somewhat variant, and from the completed condition of the rails as railroad rails, there was certainly nothing in the premises to show that they might not have been put into actual use in this country without undergoing the process of remanufacture. All the various questions of utility and adaptation of the merchandise imported are not supposed to enter into the decision of the collector in determining its dutiable classification, under the rule in *Worthington* v. *Robbins*.

*Judgment affirmed.*