DRAEGER SHIPPING CO., INC. *v.* UNITED STATES

**No. 4870.**—Invoices dated Atvidaberg, Sweden, November 19, December 17, 1937.
    Certified November 20, December 18, 1937.
    Entered at New York December 15, 1937, January 8, 1938.
    Entry Nos. 99417, 102144.

(Decided on rehearing (Reap. Dec. 4785) April 12, 1940)

*Julius J. Rosenberg* for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the defendant.

DALLINGER, Judge: These appeals to reappraisement which are before me as a result of a rehearing granted the plaintiff involve the question of the dutiable value of 100 complete unassembled sets of parts of calculating machines, E. K. model, imported from Sweden and entered at the port of New York in December 1937 and January 1938. They were appraised at 401.10 Swedish crowns per set on the basis of cost of production. It is claimed that the correct value of said merchandise is 279.33 Swedish crowns per set also on the basis of cost of production.

The plaintiff offered in evidence the affidavit of the managing director of the foreign manufacturer of said merchandise, which affidavit was admitted in evidence as Exhibit 1, and the contract between said foreign manufacturer and the plaintiff, which was admitted in evidence as Exhibit 2. The plaintiff also offered in evidence the testimony of Kenneth P. Phelps, vice president and treasurer of the Allen Calculators, Incorporated, the ultimate consignee and real importer of the merchandise herein. He testified that his corporation had never

sold any unassembled sets of complete parts of calculating machines, model E. K., in the United States; and that after receiving the merchandise at bar the unassembled sets of parts are sent to the corporation's factory where they are assembled and subsequently sold.

On cross-examination the witness testified in part as follows:

By Mrs. BENNETT:

X Q. Now, Mr. Phelps, I believe each one of these shipments consisted of fifty sets of parts, did it not?—A. Yes.

X Q. And that means fifty machines in a knocked-down condition for each shipment?—A. Yes.

X Q. * * * I show you the papers in Reappraisement 128079–A, and ask you if that importation also contains some complete machines not in a knocked-down condition?—A. Yes, I see it does. * * *

X Q. They were not in a knocked-down condition. They were the same machines in a different condition?—A. Some of them were the same machines. I see some are hand operated machines, which are not the same, with parts; but there are also some electric machines, which are the same.

X Q. Those machines that came in already set up, you entered at United States value, did you not?

*       *       *       *       *       *       *

Judge KINCHELOE. You can answer that yes or no.

A. Yes.

*       *   ·   *       *       *       *       *

X Q. You said you entered the machines that came in already assembled at their United States value?—A. Yes, because we were obliged to.

X Q. That was the price at which you sold such machines in this country when they were assembled in their assembled condition, is that right?—

*       *       *       *       *       *       *

A. When you say the "price in this country", do you mean United States value?

X Q. Yes. Based upon your price in this country that was the United States value of such machines in an assembled condition; is that right?—A. Yes, that's right.

Judge KINCHELOE. You mean you sold your machines which came in already assembled at the same price you sold your other machines that came in in a knocked-down condition and that you afterwards assembled?—

The WITNESS. Yes, sir.

In Exhibit 1 the affiant, Johan Elof Ericsson, states that he is the managing director of the Swedish manufacturer of the calculating machine part sets here in question; that no other manufacturer in Sweden makes a calculating machine or parts similar to those here imported; that the sales of sets of unassembled parts of the E. K. model machine made by his company in 1937 totaled 399, all of which were exported, 299 sets being exported to Germany at a price of 283.75 Swedish crowns per set, and 100 sets exported to the United States, which are the sets at bar, at a price of 266.10 Swedish crowns per set, as per the invoice herein; that the affiant's company does not freely offer its merchandise for export to the United States to all purchasers; and

that the cost of production of the unassembled parts in question is as follows:

*Swedish crowns*

| | |
|---|---:|
| Cost of materials | 86. 07 |
| Cost of labor | 33. 30 |
| General expenses | 60. 65 |
| Cost of containers and other costs, charges, and expenses incident to placing said merchandise in condition packed ready for shipment to the United States | 3. 00 |
| Profit | 96. 31 |
| Total | 279. 33 |

The only portions of the contract between the foreign manufacturer and the importer (Exhibit 2) which are here pertinent are the provisions granting to the importing corporation exclusive agency for the sale of the machines and unassembled parts here involved, thus corroborating the evidence in Exhibit 1 that there existed no export value for said merchandise.

Upon the entire record I find the following facts:

1. That the merchandise at bar consists of 100 complete unassembled sets of parts of calculating machines model E. K. manufactured in Sweden and entered at the port of New York.

2. That such or similar merchandise is not sold or freely offered for sale in Sweden for home consumption or for export to countries other than the United States.

3. That such or similar merchandise was not freely offered for sale to all purchasers in Sweden for export to the United States, as the importer was the exclusive agent in this country for the foreign manufacturer.

4. That there were no sales in the United States by the importer of such or similar merchandise in its condition as imported, nor of any prototype merchandise.

5. That after importation the unassembled sets of parts in question were transported to the importer's factory, there assembled, and subsequently sold or offered for sale in the United States.

6. That at the time the instant merchandise was imported, 63 complete machines of precisely the same type as said merchandise were imported and entered and appraised on the basis of the United States value thereof at $123.05 per machine. The machines assembled in the importer's factory and those imported assembled were sold in the American market at the same price.

Upon the established facts counsel for the Government in the brief filed herein seriously contends that, in spite of the fact that the appraiser, who is presumed to have acted in accordance with law, could find no foreign, export, or United States value for the imported sets of parts, and therefore appraised them on the basis of the cost of production thereof, nevertheless, the United States value is the proper

basis for determining the dutiable value. I do not concur in such a view of the law.

While it is true that 63 complete calculating machines of the E. K. model were shipped to the importer herein and were entered and appraised on the basis of the United States value thereof; and while it is equally a fact that the unassembled sets of parts of such machines were, after importation, transported to the importer's factory where they were assembled and subsequently sold or offered for sale in the United States at the same price as the 63 complete calculating machines, nevertheless, it still remains as a fundamental principle of customs law that imported merchandise must be treated for tariff purposes in the precise condition in which it is imported. *Worthington* v. *Robbins*, 139 U. S. 337; *Dwight* v. *Merritt*, 140 U. S. 213, 219.

Inasmuch as there were no sales or offers for sale in the United States of merchandise similar to the imported sets of parts, obviously there were no sales in this country of prototype merchandise. Hence, there could be no United States value for such merchandise. Consequently, the only basis for determining the dutiable value of said merchandise is its cost of production, which I find to be as follows:

|  | Swedish crowns |
|---|---|
| Cost of Materials | 86. 07 |
| Cost of Labor | 33. 30 |
| General expenses | 60. 65 |
| Cost of containers and other costs, charges, and expenses incident to placing said merchandise in condition packed ready for shipment to the United States | 3. 00 |
| Profit | 96. 31 |
| Total | 279. 33 |

Judgment will be rendered accordingly.