## ROBERT REINER, INC. *v.* UNITED STATES

**No. 5217.**—Invoice dated Einsiedel, Germany, July 30, 1938. 
Entered at New York August 20, 1938. 
Entry No. 4021.

(Decided April 16, 1941)

*B. A. Levett* for the plaintiff. 
*Charles D. Lawrence*, Acting Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

DALLINGER, Judge: This appeal to reappraisement involves the question of the dutiable value of a certain machine known as a "legger." It was imported from Germany, and entered at the port of New York in August, 1938, at $5,185.80 on the basis of United States value. It was appraised at 16,725 reichsmarks, the equivalent of $6,690, on the basis of the cost of production.

At the first hearing, held at New York on November 19, 1940, before Kincheloe, Judge, it was agreed by and between counsel for the respective parties that there existed no foreign or export value for said machine.

The plaintiff offered in evidence the testimony of two witnesses. The first, Robert Reiner, president of the plaintiff-corporation, testified that he had been personally familiar with the machine in question, since 1922; that it was a machine for manufacturing legs for ladies' hosiery; that since 1922 he had freely offered similar machines throughout the United States to all purchasers for a basic price predicted on the price paid for said merchandise to the German manufacturer; and that the machine was sometimes sold in its imported condition and sometimes with certain American-made parts added thereto.

On cross-examination the witness testified that the machine in its imported condition does not make the complete hosiery; that he never had identical machines in his warehouse; that he usually placed his orders for a large number of machines at one time; and that he thought he had a purchase order in which machines imported previous to July, 1938, were included.

At this juncture counsel for the plaintiff stated that he would produce the order desired by counsel for the Government if it were possible to obtain the same. The witness then testified in part as follows:

By Mrs. BENNETT.

X Q. Now Mr. Reiner, during July of 1938, did you sell any machines identical to .these imported machines to American customers without additional attachments made in this country?—A. I don't think we did.

\*          \*          \*          \*          \*          \*          \*

X Q. .Now where do you erect the machine?—A. On the different places wherever the factory of our customer is located.

X Q. Does it come in, knocked down?—A. Oh yes, the machine weighs about 12 tons. . It comes .in four cases.

X Q. When you erect it, you furnish, you sell to the American purchaser, the lace attachment and picot attachment, made in your own plant, and the American motors, switches, rheostat, and chain drive?—A. Yes, correct.

X Q. Now when you sell the machine, do you pay for the erection, cost of erection?—A. We do.

\*.          \*          \*          \*          \*          \*          \*

X Q. When you sell the erected machine to your American customer, you include in that price, the price of the motors, switches, rheostat, and chain drive, which you purchase from the American manufacturers?—A. Yes, we do.

X Q. Do you give 'them the benefit of the 20 per cent reduction from the manufacturer, or do you sell them at the list prices?—A. We sell the machine, including all these articles.

\*    :     \*          \*          \*          \*     ·     \*          \*     ;

X Q. The price of the articles included therein is that the list price of the articles or your manufacturer's reduced prices?—A. That is the list price.

X Q. The list price, the price at which exclusive of your 20 per cent discount, is that right?—A. Yes.

Mrs. Bennett. If your Honor please, I believe counsel for the importer is willing to concede, and the Government is willing to concede a deduction of 8 per cent for general expenses is proper, if there is a United States value in this case.

Mr. Levett. How much?

Mrs. Bennett. 8 per centum for general expenses if there is a United States value in this case.

Judge Kincheloe. All right. Let the record show that.

Mr. Levett. You do not want to make any concession on the profit?

Mrs. Bennett. The Government says it is a loss.

The second witness, John A. Vollmann, assistant secretary of the plaintiff-corporation, testified that he had charge of the books and was familiar with sales made by his company; that the machines in question were offered for sale in two ways, either f. o. b. New York basic price, or as erected with the various attachments; that the f. o. b. price at New York was for the machine in its imported condition; that in the case of a letter to the Scott Hosiery Mills of Graham, N. C., dated June 17, 1938, the basic price quoted was $8,990; that his company entered into an agreement with the Graham Full Fashion Hosiery Mills, Graham, N. C., dated July 30, 1938, which agreement was admitted in evidence as exhibit 1, and which calls for the purchase and installation of two so-called hosiery leggers for $21,490, and one so-called hosiery footer for $10,895; that he had a letter, dated June 20, 1938, addressed to the Pocomoke Textiles Incorporated, of Pocomoke City, Md., in which one of the machines in question was offered at the basic price of $8,990, which machine was subsequently delivered.

At this juncture counsel for the plaintiff conceded that the plaintiff made no profit on the sale of the machine in question, the claim being limited to the selling price in the United States less general expenses and other statutory deductions, but no profit.

The witness also testified that the ocean freight on one of the machines in question was $312.

On cross-examination, at the request of counsel for the Government, letters containing offers of sale of the machines in question during 1939 were admitted in evidence as collective exhibit 2.

The witness then testified that there was only one sale in which a machine was sold at the basic price f. o. b. New York without any attachments, and that was in June, 1937.

The witness then continued to testify in part as follows:

X Q. Mr. Vollmann, when you testified $8,990, was the basic price of this particular machine, you had to figure something. What did you figure from?— A. Inasmuch as I only had the sales price for this particular machine, I had to deduct these items which we added in this country, in order to arrive at the basic price.

X Q. Then it was not the actual price you offered to this purchaser, it was the price you offered the machine to this purchaser, less some other attachments you had put on, the attachments, is that right?—A. No, we have offered this machine at two prices to our customer, but just for this price I had only the actual sales price to the customer, therefore I had to deduct the various items. The offer itself was made in two prices.

X Q. You never made any sales without the attachments?—A. As far as I can recollect no, we did not, the motors were always essential to the machine.

\*      \*      \*      \*      \*      \*      \*

X Q. Mr. Vollmann, these offers that you have produced did they cover any machines other than the leggers of the size involved in this reappraisement?—A. They also cover footers.

\*      \*      \*      \*      \*      \*      \*

X Q. So then you could not sell this machine alone, without selling a footer?—A. No, there are two machines necessary.

X Q. Where did you get the footer machine?—A. Also from the same manufacturer, Machinenfabrik Einsiedel.

X Q. I show you Collective Exhibit No. 2, and ask you which of the offers included therein,—I will ask you to call them off by the date and the name of the purchaser, cover leggers and footers?—A. Letter November 29, 1938, from Caswell Knitting Mills, Yanceyville, North Carolina, covers leggers and footers.

\*      \*      \*      \*      \*      \*      \*

\* \* \* Letter dated November 15, 1938, Wyatt Knitting Co., Sanford, North Carolina, covers leggers and footers; letter dated July 15, 1938, Fayetteville Knitting Mills, Fayetteville, North Carolina, covers leggers and footers; letter dated July 27, 1938, Graham Full Fashioned, Inc., Graham, North Carolina, covers leggers and footers; one letter dated June 17, 1938, to Scott Hosiery Mills, Inc., Graham, North Carolina, covers leggers only.

\*      \*      \*      \*      \*      \*      \*

Mrs. BENNETT. Just a moment on that, what is the size of that legger?

\*      \*      \*      \*      \*      \*      \*

The WITNESS. It happened to be a 28 section, instead of 24, but the price would be proportionate.

\*      \*      \*      \*      \*      \*      \*

By Mrs. BENNETT.

\*      \*      \*      \*      \*      \*      \*

X Q. That makes it a difference in price?—A. Yes it does in this case.

Mr. LEVETT. It is a uniform price according to the sections?

The WITNESS. Yes, well not exactly a uniform price. I have another letter dated June 20th, 1938, addressed to Pocomoke Textiles, Incorporated; Pocomoke covers one legger only, 24 sections.

On redirect examination the witness testified in part as follows:

R. Q. When the machines are delivered, are they sent direct from the dock, without being unpacked?—A. Yes.

R. Q. And they are delivered in the exact condition in which imported?—A. Yes.

R. Q. And the accessories are sent afterwards, or orders made in this country are built separately, or sent separately?—A. They are sent separately.

At the conclusion of the testimony counsel for the Government moved to dismiss the appeal on the ground that the importer had not

sustained the burden resting upon it, which motion was taken under advisement by the trial judge.

The Government then offered in evidence special agent's report No. 79–95, dated November 16, 1940, which was admitted in evidence as exhibit 3. The case was then continued to November 27, 1940, for the purpose of having the witness Vollmann produce certain documents.

At the second hearing, held at New York on November 27, 1940, John A. Vollmann was recalled as a witness on behalf of the plaintiff, and offered in evidence additional orders covering the machines in question imported by the plaintiff during the year 1938, which orders were admitted in evidence as collective exhibit 4. Counsel for the Government called attention to the fact that said collective exhibit 4 was entirely in the German language, and asked permission to file translations thereof, which request was granted, but no such translations have been filed with the papers. The witness then continued to testify in part as follows:

R. X Q. Now Mr. Vollmann, I show you order No. 7379 (handing to witness), and call your attention to the pencil figures on the right-hand side, numbers 9333, 9331, and 9334, in the upper right-hand part of the order, and ask you what those numbers indicate?—A. Those numbers indicate the serial numbers of the three machines.

R. X Q. Does that order cover three machines?—A. Yes.

R. X Q. Were these leggers?—A. Yes, these were leggers.

R. X Q. Were they the same size leggers?—A. Yes, all three machines.

*       *       *       *       *       *       *

R. X Q. So your records show whether there were any other machines that arrived in the United States between the end of July and August when these two arrived?—A. Only machine No. 9331.

R. X Q. Which is July 29, 1938?—A. Yes.

*       *       *       *       *       *       *

R. X Q. I show you collective exhibit 2 (handing to witness) and ask you if you can find from those exhibits the date of the offer of the three machines covered by Order No. 7379, collective exhibit No. 4?—A. Yes, I have them.

R. X Q. Just a moment. I will give you the numbers. What was the date on which machine No. 9333, on Order No. 7379, was offered for sale in this country?—A. This machine, No. 9333, was offered on November 22, 1938.

*       *       *       *       *       *       *

R. X Q. On what date did you offer in this country machine No. 9331, covered by order No. 7379?—A. No. 9331 was offered on July 27, 1938, to Graham Full Fashion, Inc., Graham, North Carolina.

R. X Q. And machine No. 9334, covered by Order No. 7379?—A. That was offered on July 27, 1938, also, to Graham Full Fashioned, Inc.

*       *       *       *       *       *       *

R. X Q. I believe you stated at Page 34 of the record of the previous trial that you could produce your firm's American price list for such machines for 1938?—A. Yes, correct.

The witness then produced a booklet containing the price list in question which was admitted in evidence as exhibit 5.

Attention having been called to a discrepancy between the basic price given in the witness' original testimony at the first hearing and the price given in exhibit 5, the witness testified on re-redirect examination in part as follows:

By Mr. LEVETT.

R. Q. I notice on this page marked "A," with your initials, the price f. o. b. dock, New York, is given as $8,955. If I recall correctly, the price you gave when you testified was $8,990, a difference of $35; is that correct?—A. $8,990.

*     *     *     *     *     *     *

R. Q. Does that mean that in giving the price of $8,990 you had neglected to deduct the chain drive price?—A. I believe that is the way it came about.

R. Q. So that the actual price at the dock of the machine you testified to before was not $8,990 but $8,955?—A. Correct.

R. Q. One other question. When the goods arrive at the docks, they are in sections?—A. Dismantled, yes.

R. Q. And they are erected and you bill the customer for the additional cost?—A. Correct.

R. Q. But as they arrive they are one complete machine, in sections?—A. Yes, sir.

*     *     *     -     *     *     *     *

R. Q. In offering these, does the price vary, whether they buy one, two, three or four?—A. It does not.

By Mrs. BENNETT.

R. X Q. Did you not testify that during July and August, 1938, you made no sales except at a price including the cost of erection?—A. That is correct.

By Mr. LEVETT.

R. Q. But you did make offers?—A. Yes.

R. Q. And were those offers made freely to the various customers throughout the country?—A. In each case.

Upon this record it is contended in the brief of counsel for the Government that there exists no United States value for the imported merchandise, for the reason that every offer to sell one of the imported machines in the United States was coupled with an offer to install the same and to equip it with certain American-made attachments, citing as authority in support of such contention the decision in *Draeger Shipping Co.* v. *United States*, Reap. Dec. 4870, affirmed by the Third Division of this court in Reap. Dec. 5118. That case involved the dutiable value of 100 complete unassembled sets of parts of calculating machines. This court found that after importation the unassembled sets of parts in question were transported to the importer's factory, there assembled, and subsequently sold or offered for sale in the United States. In its decision the court said:

While it is true that 63 complete calculating machines of the E. K. model were shipped to the importer herein and were entered and appraised on the basis of the United States value thereof; and while it is equally a fact that the unassembled sets of parts of such machines were, after importation, transported to the importer's factory where they were assembled and subsequently sold or offered for sale in the United States at the same price as the 63 complete calculating machines, nevertheless, it still remains as a fundamental principle of customs law that imported

merchandise must be treated for tariff purposes in the precise condition in which it is imported. *Worthington* v. *Robbins*, 139 U. S. 337; *Dwight* v. *Merritt*, 140 U. S. 213, 219.

In my opinion the cited case has no application to the facts established herein. Inasmuch as it is shown by the uncontradicted evidence that the machine in question in its imported condition was freely offered for sale to all purchasers in the United States at the basic price of $8,955 f. o. b. New York, the fact that the importer also offered to install the machine and equip it with certain American-made attachments is in my opinion immaterial.

In regard to the other question raised by counsel for the Government as to the existence of prototype merchandise, it should be pointed out that the special agent in his report (exhibit 3) in estimating United States value gives a figure of $2,698 as the amount of the 40 per centum ad valorem duty *on a prototype machine.* Moreover there is evidence in the record of the offer, importation, and sale of this prototype machine.

On the entire record I find the following facts:

1. That the imported merchandise at bar consists of a so-called legger machine imported from Germany in August 1938.

2. That at the time of its exportation there existed for said machine no foreign or export value.

3. That at the time of its exportation the said machine in its imported condition, packed ready for delivery, was freely offered for sale in the ordinary course of trade to all purchasers in the United States f. o. b. New York at the basic price of $8,955.

4. That the ocean transportation and insurance amounted to $312.

5. That the allowance for general expenses was 8 per centum of the said basic price.

6. That no profit accrued to the importer from said transaction.

Upon these facts the United States value is thus determined:

| | |
|---|---|
| United States selling price | $8955. — |
| Less 8% general expenses | 716. 40 |
| | 8238. 60 |
| Less ocean freight and insurance | 312. — |
| | 7926. 60 |
| Less duty (7926.60÷1.40) | 2264. 74 |
| United States and dutiable value | $5661. 86 |

Judgment will be rendered accordingly.