**No. 49589.**—Protests 97401–K, etc., of Hoffman-La Roche, Inc. (New York).

COLE, Judge: These cases bring for determination the tariff classification of a coal-tar product described on the invoices as "m-dimethylaminophenlester of dimethylcarbaminic acid." The collector classified the merchandise under paragraph 28, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 28), assessing duty thereunder at 7 cents per pound and 45 percent ad valorem. Plaintiff's counsel, in his opening remarks, stated that "there is no definite statement by the collector as to its classification, rather a very general one." From an examination of the

official papers, however, it seems clear that the imported product was regarded by the classifying officer as a coal-tar medicinal and accordingly included within the catch-all provision in said paragraph 28 for "other medicinals." Plaintiff claims that the merchandise is made in part of dimethylaminophenol, a product *eo nomine* provided for in paragraph 27, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 27), and therefore classifiable under either subdivision (3) or (4) of said paragraph, and dutiable at 7 cents per pound and 40 percent ad valorem. The subparagraphs referred to provided for—

(3) all products, by whatever name known, which are similar to any of the products provided for in this paragraph or in paragraph 1651, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph or in paragraph 1651;
(4) all mixtures, including solutions, consisting in whole or in part of any of the foregoing products provided for in this paragraph, except sheep dip and medicinal soaps.

The uncontradicted testimony of a qualified research chemist employed as junior administrative assistant to the vice president and general manager in charge of plant operations of the plaintiff corporation, who stated that "my specific duties were food and drug regulations, importations, Government work, in charge of chemical processes, writing the processes and supervising control of products which were released for marketing," furnishes the only oral evidence. After testifying that he was familiar with the method, the witness described production of the imported commodity as follows (R. 4):

Well, the commodity itself is a definite chemical and it has a structural formula. It is produced by means of other chemicals. Phosgene and trimethylamine are combined together to form a dimethylcarbamic chloride, which is a chemical with non-medicinal properties. Dimethylcarbamic chloride is combined with dimethylaminophenol to form the base or intermediate which was imported.

In response to the question, "Do you at any stage of the production of the imported commodity have dimethylaminophenol," he answered "Yes, dimethylaminophenol and the dimethylcarbamic chloride are combined in a chemical reaction to form the base." Further testimony revealed that the product, as imported, "has no medicinal properties for man," and that "it would be toxic if it were injected intravenously or subcutaneously."

The testimony concerning treatment of the merchandise after importation by plaintiff, and the ultimate use thereof under a commercial label, is immaterial for the purposes of this case. It is its condition at the time of importation which controls its tariff classification. *Worthington* v. *Robbins*, 139 U. S. 337; *Dwight* v. *Meritt*, 140 U. S. 213, 219.

The undisputed testimony that the imported product possesses no therapeutic properties and is without medicinal value very definitely removes the merchandise from classification as a "medicinal" under paragraph 28, *supra*, within our interpretation of that term in *Bayer Co., Inc.* v. *United States*, Protest 67487–K, decided June 28, 1944, C. D. 859. The collector's classification is therefore erroneous.

Thus the question is presented as to the proper subdivision of paragraph 27, *supra*, which includes the product in question. The proof does not support a positive finding that the present merchandise is similar to the dimethylaminophenol provided for in said paragraph. There is no evidence showing comparable characteristics between the product *eo nomine* designated and the imported merchandise from which a conclusion as to similarity might be drawn. Such testimony is necessary for such a finding. The claim under subdivision (3), *supra*, is therefore denied.

That dimethylaminophenol is mixed with dimethylcarbamic chloride to form the imported intermediate amply supports the protest claim under subdivision

(4), *supra*, for the instant merchandise is a mixture consisting in part of a product specifically provided for in said paragraph 27. Accordingly, the merchandise is properly dutiable thereunder, as alleged by plaintiff.

The protests are sustained and the decision of the collector in each instance is reversed. Judgment will be rendered accordingly.