(C. D. 1431)

E. F. DREW & Co. *v.* UNITED STATES

328

(Decided June 17, 1952)

*Eugene R. Pickrell* (*Michael Stramiello, Jr.*, of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard E. FitzGibbon* and *Joseph E. Weil*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; MOLLISON, J., concurring

COLE, Judge: Plaintiff, whose business includes the refining of fats and oil, manufacture of shortening oil, soaps for technical uses, and also the production of vitamins, imported unirradiated ergosterol, which was classified as a chemical compound, not specially provided for, under paragraph 5 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 5), which reads as follows:

All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

Plaintiff claims that the substance is more specifically provided for as an advanced drug and, therefore, classifiable as such under paragraph 34 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 34), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, which, so far as pertinent herein, provides for—

Drugs, * * * which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, and not containing alcohol, 5% ad val.

The testimony discloses that unirradiated ergosterol, the commodity under consideration, is a natural component of yeast, from which it is obtained by heating the yeast with an alkali and then purifying by recrystallization, through which the alkali properties are removed, resulting in an uncompounded substance that is substantially wholly pure, containing no alcohol, but unpalatable and without nutritive value. Stated more pointedly, unirradiated ergosterol is an uncompounded, inedible substance, of vegetable origin, and containing no alcohol.

The sole question for determination, therefore, is whether the commodity comes within the statutory definition of a drug, which includes "only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes," paragraph 34 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 34).

Unirradiated ergosterol has been used experimentally, attempting to establish therapeutic or medicinal value therefor. Dr. Walter Raab, an associate public health physician on tuberculosis, employed by the New York State Department of Health, found, in his experimental work, that unirradiated ergosterol suppressed the development of tuberculosis in guinea pigs; and in man, suffering from tuberculosis, it was noted that after injection of the substance, "the tuberculosis as seen on the chest X-ray showed retrogression and absorption." Dr. W. S. Takacs, practitioner in Ohio of mechanotherapy, that uses hydrotherapy, ultraviolet, medical massage, and manipulation, in treating certain diseases, experimented with unirradiated ergosterol as a remedy for poliomyelitis. From injections given to monkeys, he concluded that the commodity had "an arresting, neutralizing and absorbing property on polio virus."

The record discloses nothing conclusive about any of the said uses. All of them were purely experimental in nature. There is no showing herein that unirradiated ergosterol has ever been used for the purposes hereinabove mentioned, either successfully or substantially, in the practice of medicine or for medicinal purposes in commercial pursuits. Such proof is entitled to no weight because in an issue like the one before us, where chief use is controlling, experimental use is immaterial. *R. W. Greeff & Co., Inc.* v. *United States*, 10 Cust. Ct. 210, C. D. 756.

Counsel for plaintiff, in his brief, states that "Plaintiff's evidence is that *the sole use of unirradiated ergosterol* [italics added] is to make irradiated ergosterol or Vitamin D–2 by means of exposing it to ultra violet ray." The quotation is accepted as meaning that the sole commercial use of the substance is for conversion, by irradiation, into vitamin D–2, a fact supported by competent proof before us. It means, further, that plaintiff does not rely upon its proof relating to experimental usage, a result abundantly justified by the record.

In the process of irradiation, inactivated ergosterol is dissolved in ether, and the ether solution is subjected to ultraviolet light for definite periods of time. Following distillation of the dissolvent, the residue is separated into active and inactive material. The activated substance is claimed; the inactive is subjected to further irradiation.

Irradiation of ergosterol is characterized as a "cycle," through which several different compounds are being formed, changing into

new substances. In the course of such processing, vitamin D–2 is isolated. Plaintiff's whole case on the matter of chief use is based on vitamin D–2 as a product sold to the pharmaceutical trade and to the feed industry.

Whatever may be the use of vitamin D–2, it has no bearing on the disposition of the present case. Vitamin D–2 is not the imported material. Instead, it is a new product, resulting from chemical processing of the unirradiated ergosterol, which is the merchandise to be classified herein. Irradiation destroys the unirradiated ergosterol and creates other steroids, described as "Vitamin D–2, tachysterol, lumisterol and supra sterols." In other words, unirradiated ergosterol is mere material, processed after importation, into a mixture of products or unstable compounds, possessing the peculiar faculty of naturally changing into new substances.

Under the fundamental principle that tariff classification of merchandise is controlled by its condition as imported, *Dwight* v. *Merritt*, 140 U. S. 213, and *United States* v. *Citroen*, 223 U. S. 407, unirradiated ergosterol is not a drug within the statutory meaning thereof, paragraph 34, *supra*, but, being concededly a chemical compound, it is classifiable as such under paragraph 5, *supra*, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.

### CONCURRING OPINION

MOLLISON, Judge: I concur in the conclusion reached by my colleagues in this case, but I do so for somewhat different reasons than set forth in the majority opinion. As I understand the contention made by the plaintiff herein, it is, in substance, that the definition of the term "drug" in paragraph 34 is divisible into two parts, and that in order to be classifiable as a drug under that paragraph, in addition to other requirements which seem to have been met by the unirradiated ergosterol in issue, a substance must—

(1) have therapeutic or medicinal properties,

and

(2) be chiefly used for medicinal purposes.

Plaintiff contends that the testimony of its witnesses Raab and Takacs as to the results observed in their experience in the use of unirradiated ergosterol in connection with tuberculosis and poliomyelitis, even though experimental or clinical in nature, established *prima facie* that unirradiated ergosterol has therapeutic or medicinal properties, and that this *prima facie* showing was not overcome by the evidence offered by the defendant consisting of the opinion of a

doctor of medicine and of pharmacology that unirradiated ergosterol "would be unlikely to have any therapeutic effect" and that he did not believe that unirradiated ergosterol "has any curative or healing effect or properties in connection with curing and healing ailments and diseases."

Plaintiff seemingly admits that unirradiated ergosterol is not chiefly used for medicinal purposes by reason of the therapeutic or medicinal properties the existence of which is claimed to have been established by the testimony of witnesses Raab and Takacs, but contends, in effect, that it is not required that a substance claimed to be a drug shall be chiefly used for the therapeutic or medicinal properties which satisfy requirement (1) above. It is contended that since the chief use of unirradiated ergosterol is for medicinal purposes, i. e., the production of vitamin D-2, it fulfills requirement (2) above.

While the results obtained by the witnesses Raab and Takacs in their experimental or clinical work with ergosterol indicate possibilities of therapeutic or medicinal properties in unirradiated ergosterol, I am not wholly satisfied that the evidence thereof may be said to have established that unirradiated ergosterol possesses such properties. However, assuming, without holding, that the plaintiff established that unirradiated ergosterol has therapeutic or medicinal properties of the nature indicated, and that the opinion evidence offered on behalf of the defendant was insufficient in weight to shift the burden of going forward with the evidence back to the plaintiff, I am, nevertheless, convinced that the plaintiff has failed to establish that unirradiated ergosterol is a drug within the definition contained in paragraph 34 of the tariff act.

I am of the opinion that when the statutory definition of the term "drug" requires that the substances included thereunder have therapeutic or medicinal properties and be chiefly used for medicinal purposes, the said medicinal purposes must be related to the said therapeutic or medicinal properties. There is no question but that unirradiated ergosterol is not chiefly used for medicinal purposes on account of any therapeutic or medicinal property it may possess along the lines indicated by the witnesses Raab and Takacs. So far as its use in the production of vitamin D-2 is concerned, the evidence indicates that in the unirradiated form ergosterol has no therapeutic or medicinal properties, but rather that these properties are created by irradiation. In this sense, as noted by my colleagues, unirradiated ergosterol is a mere material, which, after processing, acquires the characteristics of a drug, but does not possess them in the unprocessed form.