E. F. DREW & CO. *v.* UNITED STATES (No. 4745)[1]

[1] C. A. D. 536.

United States Court of Customs and Patent Appeals, June 24, 1953.

*Eugene R. Pickrell* (*Michael Stramiello, Jr.*, of counsel) for appellant.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[Oral argument April 17, 1953, by Mr. Stramiello and Mr. FitzGibbon]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, pursuant to its decision, C. D. 1431, one judge specially concurring.

A substance known as unirradiated ergosterol was imported by appellant and classified by the Collector of Customs at the port of New York as a chemical compound, not specially provided for, under paragraph 5 of the Tariff Act of 1930.

Appellant filed its protest against such classification claiming that the merchandise is properly dutiable as an advanced drug under paragraph 34 of the act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802.

The involved paragraphs reads as follows:

Par. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

Par. 34. Drugs, * * * which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, and not containing alcohol, 5% ad val.

At the trial, three witnesses testified on behalf of appellant and the deposition of one other witness on its behalf was placed in the record. Two witnesses appeared for the Government.

It appears that the involved merchandise is found in yeast and is obtained by heating the yeast with an alkali and purifying by means of recrystalization which changes the uncompounded substance, resulting in the imported goods. It is without nutritive value, unpalatable, and devoid of alcohol content.

The record shows that unirradiated ergosterol has been used in experiments and those experiments were detailed by witnesses for appellant in an attempt to establish therapeutic or medicinal properties therein.

According to one of appellant's witnesses, a highly qualified physician, unirradiated ergosterol was found in experimental work to suppress the development of tuberculosis in guinea pigs and also in human beings suffering from tuberculosis. The witness stated he noted that after an injection of the substance "the tuberculosis as seen on the chest X-ray showed retrogression and absorption." Another witness for appellant was a practitioner of mechanotherapy in the State of Ohio. He stated that in his profession use is made of hydrotherapy, ultraviolet, medical massage and manipulation in the treatment of such human ills as rheumatism, bursitis and arthritis. The

witness was not authorized to use drugs in the practice of his profession. He stated that he had experimented with unirradiated ergosterol with monkeys. He prepared the injection substance by thoroughly mixing unirradiated ergosterol with polio virus and then injecting the mixture into monkeys. Those monkeys did not develop paralysis. Other monkeys injected only with polio virus developed paralysis. That witness did not use his injection in monkeys afflicted with poliomyelitis and he never conducted experiments with the mixture on human beings. He frankly stated that so far as he knew, unirradiated ergosterol had never been used in the prevention or cure of poliomyelitis.

A further witness was a chemist in charge of the research and development department of appellant. His testimony was that unirradiated ergosterol is a chemical compound and used by appellant solely for the purpose of making Vitamin D–2 by irradiating the unirradiated substance.

Appellant's fourth witness, managing director of the company of the exporter of the involved substance, testified that it is produced from yeast.

The results of the experiments of the witnesses with respect to use of unirradiated ergosterol in the treatment of tuberculosis were not reported to any medical association, although the witness stated he discussed it before medical thoracic specialists in the District of Columbia.

On behalf of the Government, one doctor, a Ph. D. in biochemistry, and head of the Fats and Sterols Department of the Fleischmann Laboratory, stated that that company produced unirradiated ergosterol from yeast and irradiated approximately ten per cent of the substance in the production of Vitamin D–2, selling the remainder to other firms which irradiated or activated it for the same purpose.

The second witness for appellee, highly qualified in all respects, including that of being a professor in charge of the Pharmacology Department of Cornell University Medical College, and associated with several hospitals, and the author of many articles on pharmacology, stated he was familiar with unirradiated ergosterol and its uses and that it "would be unlikely to have any therapeutic effect, and I can also speak from my knowledge of medicinal procedures in various hospitals, that unirradiated ergosterol is not employed as a therapeutic in the institutions with which I am familiar."

From the record as above outlined, the majority decision of the trial court was of the opinion that it disclosed nothing about any of the therapeutic or medicinal uses of the imported merchandise. It also said in that decision that all of those uses were purely experimental and that no showing had been made that the imported merchandise had ever been used successfully or substantially in the practice of medicine or for medical purposes in medical pursuits. It was

held in that decision that the proof on behalf of appellant was entitled to no weight, citing the case of *R. W. Greff & Co., Inc.* v. *United States,* 10 Cust. Ct. 210, C. D. 756.

In the decision of the majority, it was stated that in the process of irradiation, the imported merchandise is first dissolved in ether and the solution then subjected for definite periods of time to ultra-violet light. After the dissolvant has been distilled, the residue is separated into active and inactive material. The inactive material is then subjected to further irradiation.

It appears, as is stated in the majority decision below, that the irradiation of the imported merchandise is known as a "cycle" during the course of which several different compounds of new substances are formed, and that in the course of such process, Vitamin D–2 is gotten by itself and that plaintiff's whole case with respect to chief use is based on the production of Vitamin D–2 which is sold to the pharmaceutical trade and to the feed industry.

The majority was of the opinion that the use of the vitamin has no bearing upon the disposition of the issue for the reason that the vitamin itself was not imported but was a new product resulting from chemical processing of the unirradiated ergosterol which was the imported merchandise. It was noted in the decision that the irradiation destroys the unirradiated ergosterol and creates other steroids which are described as "Vitamin D–2, tachysterol, lumisterol and supra sterols." Therefore, it was concluded that the imported merchandise is a mere material which is chemically processed after importation into a mixture of products or unstable compounds possessing the peculiar faculty of naturally changing into new substances.

The majority of the trial court in their decision then held that the imported merchandise is not a drug within the statutory meaning of paragraph 34 on the fundamental principle that tariff classification of merchandise is controlled by its condition as imported, citing *Dwight* v. *Merritt,* 140 U. S. 213, and *United States* v. *Citroen,* 223 U. S. 407.

In the specially concurring opinion it is stated that, as understood by the writer thereof, the contention made by counsel for appellant was that the definition of the term "drug" appearing in paragraph 34 is divisible into two parts "and that in order to be classifiable as a drug under that paragraph, in addition to other requirements which seem to have been met by the unirradiated ergosterol in issue, a substance must—(1) have therapeutic or medicinal properties, and (2) be chiefly used for medicinal purposes."

The specially concurring judge was of the opinion that counsel for appellant admitted that unirradiated ergosterol was not chiefly used for medicinal purposes because of any therapeutic or medical properties it possessed but contended it is not required that a substance claimed to be a drug should be chiefly used for therapeutic or medicinal

purposes and that the production of Vitamin D-2 from the imported merchandise established that it was chiefly used for medical purposes.

We are of the opinion that the results of the experimental work, as hereinbefore set out, may indicate probabilities of therapeutic or medicinal properties in unirradiated ergosterol, but we do not think that the evidence can properly be said to have satisfactorily established that such substance possesses those properties.

Even if assuming, without holding, that the imported goods possesses therapeutic and medical properties, we are convinced that the record on behalf of appellant has failed to establish that at the time of its importation the merchandise came within the definition contained in paragraph 34 in that it is chiefly used for medicinal purposes.

Counsel for appellant, in their brief, argue that one of the issues before the trial court was whether the imported merchandise possessed therapeutic or medicinal properties, and another issue was whether or not it is chiefly used for medicinal purposes. Counsel allege that the trial court erroneously applied a test for determining chief use, stating in their brief:

* * * It becomes obvious that in deciding the issue of whether a substance has therapeutic or medicinal properties the rule of chief use has no application. As stated above chief use is one of the issues which the lower Court was called upon to decide, but it is submitted that legal principles relating to chief use are not to be applied in deciding an issue relating to the therapeutic or medicinal properties of a substance.

Counsel, in their brief, also argue that the judgment of the court below was based upon the presumption that the imported merchandise which was used as a material to make a medicine such as Vitamin D-2 by processing after importation cannot be classified as a drug within paragraphs 34 or 1669 of the act, and notes that no court decision was cited to support their conclusion.

The difficulty of appellant's position is that there is nothing in the record to indicate that the vitamin exists, as such, in the imported merchandise. We think it is a matter of common knowledge that new substances can be formed from other substances that had not existed in the concomitant parts. In that respect we might suggest that water is the result of a combination of hydrogen and oxygen; sulphuric acid a product of the reaction between hydrogen and sulphur; salt a new product produced by the reaction between sodium and chloride.

Similarly, here, we find nothing in the record that suggests the presence of the alleged medicinal property Vitamin D-2 in the imported merchandise.

Counsel for appellant relies heavily upon the case of *Sherka Chemical Co., Inc.* v. *United States,* 33 C. C. P. A. (Customs) 53, C. A. D. 316, in support of their contention that since Vitamin D-2 is produced from the imported merchandise after processing, it therefore should be classified as claimed in the protest. It may be noted that the mer-

chandise in that case when imported contained the very substance that was sought and obtained after processing. In this case there is nothing in the record to indicate the existence of the vitamin in the importation. Therefore, that case cannot be properly considered as affecting the issues here.

Counsel for appellant, in their brief, state that

* * * The importer's evidence is that the sole use of unirradiated ergosterol is to make irradiated ergosterol which is Vitamin D–2 by means of exposing it to ultra-violet ray * * *. The government's witness Breivik also testified that unirradiated ergosterol is irradiated to make Vitamin D–2, and in the irradiation thereof Vitamin D–2, tachysterol, lumisterol and supra sterols are produced * * *.

Therefore, according to counsel's own contention, the production of the vitamin by means of the chemical treatment of the imported merchandise is all that must be shown in order to prove that its proper classification was as claimed. With such contention we cannot agree.

We have given utmost consideration to the able brief and clear oral argument presented by counsel for appellant but in our opinion there is no error in the judgment appealed from and it is, therefore, *affirmed*.

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case and JACKSON, Judge, retired, was recalled to participate herein.