**No. 58259.**—Rogers Peet Co. *v.* United States, protest 136692–K (New York).

FORD, Judge:  Plaintiff filed this suit seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties upon an importation of wool scarves.  The collector classified the merchandise as "wool wearing apparel in part of fringe," and levied duty thereon at the rate of 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930 and T. D. 50263 (2).

By timely protest, the plaintiff claims that:

1.  The rate or rates of 90% under par. 1529, tariff act of 1930, or other duty charged by you, is not the legal duty chargeable upon said goods.

2.  We claim said scarves are not made wholly or in part of fringe, and therefore are not classifiable for duty under par. 1529 (a), tariff act of 1930.

3.  That said scarves are composed wholly or in part of wool and therefore are properly dutiable at 50¢ lb. plus 30% under par. 1115 (a), tariff act 1930, by virtue of the United Kingdom Trade Agreement, T. D. 49753.

At the trial, the following exhibits were admitted in evidence:

> Plaintiff's exhibit 1—a wool scarf
> Plaintiff's exhibit 2—a wool scarf
> Plaintiff's exhibit 3—a wool scarf
> Plaintiff's collective illustrative exhibit 4—fringes
> Plaintiff's illustrative exhibit 5—fringes

Counsel for the respective parties agreed in substance that the scarves have at their respective ends extensions of the warp threads to finish the ends, and that this finish was produced in the process of weaving the scarves by omitting certain weft threads from the ends of the scarves; that the scarves are not in part of any fringes that were produced as a separate entity and then attached to the scarves.

One witness, testifying for the plaintiff, stated that he is, and has been, in the fringe business since 1907, during which time he had bought, sold, imported, and manufactured all types of fringes.  He defined a fringe as:

\* \* \* a continuous yardage of bullion or twisted or single strands with a distinct and separate heading that can be used to sew on on any other form but the heading must be tight and have sufficient strength to hold the strands.

The witness stated further that exhibits 1, 2, and 3 do not have, and are not in part of, a fringe, as that term is known in the trade in the United States; that all

of the fringes that he has bought, sold, imported, and manufactured always had to have a footing or a heading, as appears on plaintiff's exhibits 4 and 5; and that a fringe must have a definite heading to make it a fringe as such.

It is the contention of counsel for the plaintiff that the testimony set out above is sufficient to overcome the presumption of correctness attending the action of the collector in classifying the involved scarves as being in part of fringe, and to establish that the involved scarves are not in any part of fringe. With this contention, we cannot agree. It may be true, as stated by the witness, that all the fringes he has bought, sold, imported, and manufactured had to have a footing or a heading, but that is not to say that there are not other kinds of fringes.

In *Akawo & Co., Inc.* v. *United States*, 6 Cust. Ct. 370, C. D. 498, this court considered the question of whether certain cotton rugs, having their ends finished by omitting the weft threads and allowing the ends of the warp threads to extend beyond the ends of the rugs, and knotting the protruding warp threads in groups at intervals of approximately 1¾ inches, were rugs in part of fringe. In that case, it was agreed by counsel that:

\* \* \* the merchandise involved in this suit, represented by collective exhibit 1, consists of cotton rugs, having their ends finished by omitting weft threads and allowing the ends of the warp threads to extend beyond the ends of the rugs, and knotting the protruding warp threads in groups at intervals of approximately 1¾ inches.

In disposing of the question presented in the *Akawo* case, *supra*, this court quoted the following definition from Webster's New International Dictionary, 1933:

Fringe. n. 1. An ornamental border or material for borders consisting sometimes of projecting ends of a fabric twisted or plaited together, and sometimes of loose threads of wool, silk, or linen, or strips of leather, or the like, attached to a band of the same material.

This court then stated:

Although the fringe on these rugs had not reached a stage where it was entitled to be regarded as a fringe in and of itself prior to its entry into the rugs, it would nevertheless appear to be well within the above definition of fringe. It was so classified by the collector, and the stipulation in no way contradicts such classification. It would therefore appear that these rugs are at least in part of fringe, and this would appear to be all that is required by said paragraph 1529.

It is our view that the omission from paragraph 1529 of the word "composed," which appeared in paragraph 1430 of the act of 1922, is significant. This was our view in the *Kohlberg* case, *supra*, and it is our view in this case. Our reasoning in the *Kohlberg* case, *supra*, appears to be equally applicable here, and when applied to the facts in this case answers all the material questions presented. In the enactment of paragraph 1529 we are of the opinion that the Congress has manifested an intention to differentiate between an article wholly or in part of fringe, and an article composed in any part, however small, of fringe.

Counsel for the plaintiff contends also that because if the fringe on these rugs were removed it would not be fringe at all, or at least not such fringe as would be dutiable as a fringe under paragraph 1529, it is not within the purview of said paragraph. There is nothing to indicate that the Congress intended to make the classification of fringe dependent upon what might be done to it after importation. Therefore the condition in which this merchandise was imported controls its classification, and as imported the rugs were in part of fringe. *Worthington* v. *Robbins*, 139 U. S. 337; *Dwight* v. *Merritt*, 140 U. S. 213.

The foregoing makes it clear that there are fringes which do not have a heading or footing. *St. Andrews Textile Co., Inc.* v. *United States*, 32 C. C. P. A. (Customs) 117, C. A. D. 294, also supports our view on this point.

In the *St. Andrews* case, *supra*, the Court of Customs and Patent Appeals quoted the following from its decision in *Alfred Kohlberg, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 354, C. A. D. 111:

It is our view that Congress never intended that the provision "articles * * * in part thereof" should be given such an interpretation as to make it subject to the application of the said principle of a preexisting component material, and the language of the provision, we think, clearly implies that a thing may be a part of the article referred to even though the part was produced in connection with the production of the article itself.

*     *     *     *     *     *     *

In view of the interpretation which we have herein given the controverted provision, it follows that the gloves at bar, which are in part of lace, were properly classified under paragraph 1529 (a), *supra*, notwithstanding the fact that the lace portions of the gloves are shown not to have had an existence separate from the gloves themselves.

The court then stated:

Since the statute (par. 1529 (a)) uses the term "fringes" in the same connotation that it uses the term "laces," the construction of the statute there made is here controlling. It follows, therefore, that mufflers having ends composed of fringes produced in the process of weaving must be considered as being in the same category, for customs duty purposes, as mufflers having independently produced fringes attached to them.

Since the ends of the scarves in the present case were produced in the same manner as were the ends of the scarves in the *St. Andrews* case, *supra*, to wit, by omitting certain weft threads from the ends of the scarves, we see no escape from the conclusion that the scarves in the instant case are in part of fringe.

In the *Kohlberg* case, *supra*, it was admitted that the gloves there involved were in part of lace, and in the *St. Andrews* case, *supra*, it was admitted that the mufflers were in part of fringe, the contention in both cases being that the merchandise was not dutiable under paragraph 1529 by reason of the fact that the lace and fringe, respectively, had no existence as lace or fringe prior to entering into the gloves or mufflers. In the *Akawo* case, *supra*, there was no admission that the rugs were in part of fringe. It was held, however, that rugs, having their ends finished by omitting weft threads and allowing the ends of the warp threads to extend beyond the ends of the rugs, were rugs in part of fringe.

In the present case, counsel for the plaintiff contends that the scarves, having their ends finished by omitting weft threads and allowing the ends of the warp threads to extend beyond the ends of the scarves, are not in part of fringe, since fringe, as such, never existed. The collector classified these scarves as being in part of fringe. One witness testified to the contrary, that the involved scarves do not have, and are not in part of, a fringe, as that term is known in the trade in the United States. This testimony is completely refuted by an examination of the samples in evidence before us, when considered in connection with the holdings in the *St. Andrews* and *Akawo* cases, *supra*. In neither of those cases did the fringe have a heading or footing, and yet in both of said cases the merchandise was held to be in part of fringe.

For the reasons stated and following the authorities cited, all claims of the plaintiff are overruled. Judgment will be rendered accordingly.